UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID KETCHUM,

Plaintiff,

Case No. 10-14749
Honorable Thomas L. Ludington

v.

RANDY KHAN, JOSEPH McMILLAN, JESSICA WELTON, and WERDA,

Defendants.
_______________________/

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT, AND DISMISSING DEFENDANT WERDA**

David Ketchum claims that during the early morning hours of May 2, 2009, Michigan State Police Troopers Randy Khan, Joseph McMillan, Jessica Welton, and Jeffrey Werda violated his rights after he was arrested for driving while intoxicated. Ketchum filed a pro se complaint on November 30, 2010, asserting four claims: (1) illegal search; (2) excessive force; (3) illegal arrest; and (4) retaliation.

Khan, McMillan, and Welton filed a motion for summary judgment on August 30, 2013.[1] The case was referred to United States Magistrate Judge Paul Komives to conduct all pretrial proceedings under 28 U.S.C. § 636. On February 27, 2014, Judge Komives issued a report recommending that Ketchum's illegal search and illegal arrest claims be dismissed but also concluding that genuine disputes of material fact preclude summary judgment on his excessive force claim. *See* Report & Rec. 1, ECF No. 43. Both parties filed objections, as contemplated

[1] On April 25, 2011, Khan, McMillan, and Welton filed a notice of suggestion of death with respect to Jeffrey Werda, indicating that Werda died on April 6, 2011.

by § 636. *See* § 636(b)(1)(C) ("Within fourteen days after being served with a copy [of the proposed findings and recommendations], any party may serve and file written objections").

Ketchum's objections will be overruled, the Defendants' objections will be overruled, and Judge Komives's report and recommendations will be adopted. The Defendants' motion for summary judgment will be granted in part and denied in part, and Werda will be dismissed.

**I**

In his report, Judge Komives detailed the facts surrounding Ketchum's arrest and subsequent hospital visit for a blood draw, as well as the case's procedural history. *See* Report & Rec. 2–6. Accordingly, only a truncated rendition is necessary here.

**A**

On May 2, 2009, McMillan and Khan saw Ketchum operating a Jeep Cherokee with a flat tire and what appeared to be a false, handwritten license plate. So they initiated a traffic stop. Upon approaching the vehicle, McMillan smelled a strong odor of intoxicants, and Ketchum acknowledged that he had consumed beer and was taking Lorazepam. McMillan asked Ketchum to step out of his car, and he did so.

Ketchum failed a number of field sobriety tests, refused to submit to a preliminary breath test, and refused to submit to a voluntary blood test. So McMillan placed him under arrest. Ketchum was read his chemical test rights, and McMillan completed an affidavit for a blood search warrant, which he submitted to Judge Kyle Higgs Tarrant of the 70th District Court. Judge Tarrant issued the warrant, and McMillan and Khan transported Ketchum to Covenant Medical Center to obtain the blood draw.

According to McMillan and Khan, on the way to the hospital, Ketchum indicated that he was not going to submit to a blood draw, so McMillan requested the assistance of Welton and

Werda. Welton and Werda traveled to Covenant Medical Center to assist with processing Ketchum's blood draw.

The Defendants claim that while at the hospital, Ketchum resisted violently, punching and kicking medical staff and the officers. They claim he tried to head-butt and bite those attempting to restrain him. Eventually, the attendant physician ordered that Ketchum's arms and legs be restrained. The Defendants deny punching, kicking, or choking Ketchum, twisting his restraints, or using any force other than what was necessary to restrain his violent outbursts.

Ketchum—whose blood was eventually drawn and analyzed, revealing a blood alcohol content of 0.15%—tells a different story. He claims that although he verbally asserted his right to resist the blood draw, he was calm, submissive, non-combative, and cooperative at the hospital. *See* Ketchum Aff. ¶¶ 16, 22, ECF No. 37. According to Ketchum, despite his attempts to comply with the Defendants' orders, once he was placed in four-point restraints they launched a "brutal attack." *Id.* ¶ 29. He claims that he was punched in the face, choked to unconsciousness and near death, and otherwise tortured. *Id.* ¶¶ 36, 43. Ketchum asserts that various officers used their body weight to twist the cuffs on his wrists and ankles, causing, among other injuries, "deep gashes" and "chipped . . . ankle bones." *Id.* ¶ 39.

Ketchum was subsequently charged with operating a motor vehicle while intoxicated; resisting, obstructing, or assaulting a law enforcement officer; and assault and battery. While he was awaiting trial on the charges, however, Ketchum was convicted in a separate case for assault with intent to commit murder, torture, mayhem, resisting or obstructing an officer, and carrying a weapon with unlawful intent. As a result of those convictions, he was sentenced to two terms of life imprisonment, a term of 50–75 years' imprisonment, and two terms of 2–15 years'

imprisonment. The prosecution then entered an order of *nolle prosequi* and dismissed the charges that arose from Ketchum's conduct on May 2, 2009.

**B**

Ketchum commenced this action on November 30, 2010. Construed liberally, his pro se complaint alleges claims under 42 U.S.C. § 1983 for illegal search, excessive force, illegal arrest, and retaliation. He seeks $2 million in damages, as well as various forms of injunctive relief, including termination of Defendants' employment and an order requiring all "Saginaw City Police, Sheriffs dept., and Michigan State Police to stop fabricating evidence against [him] in retaliation for this incident." Pl.'s Compl. 3, ECF No. 1.

On April 25, 2011, Kahn, McMillan, and Welton filed a suggestion of death pursuant to Federal Rule of Civil Procedure 25, notifying the interested parties of Trooper Werda's death. *See* Suggestion of Death, ECF No. 17. As of today's date, Ketchum has not filed a motion for substitution under Rule 25(a)(1).

Kahn, McMillan, and Welton filed a motion for summary judgment on August 30, 2013. Judge Komives issued a report recommending that the motion be granted in part and denied in part. Both parties filed objections.

**II**

Title 28 of the United States Code, § 636, provides authority for this Court to "designate a magistrate judge to . . . submit to a judge of the court proposed findings of fact and recommendations for the disposition" of a motion for summary judgment. 28 U.S.C. § 636(b)(1)(B). Notably, within fourteen days, any party may "file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." § 636(b)(1)(C). Portions of a magistrate judge's report and recommendation to which "neither party objects" are not subject to review "under a *de novo* or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

**III**

Judge Komives concluded that Ketchum's claims for illegal search, illegal arrest, and retaliation should be dismissed. He also concluded that Ketchum's claim for excessive force should proceed. Both parties filed objections, and those objections will be addressed in turn.

**A**

Ketchum raises two objections to Judge Komives's report. First, he argues that "[t]he Magistrate failed to address the focal point in the plaintiff's claim, in which argued that his First Amendment Right to religion was violated by the defendants, by not allowing him an opportunity to utilize an alternate method of testing to determine the plaintiff's alcohol content." Pl.'s Objs. 5, ECF No. 47. This objection does not address any specific portion of Judge Komives's report, because Judge Komives did not address a First Amendment freedom of religion claim. That Judge Komives did not address a freedom of religion claim follows from the fact that in the entirety of his complaint, Ketchum does not once mention a violation of his right to freely exercise his religion. *See* Pl.'s Compl. 3, 5–7, ECF No. 1. It is well-settled, however, that the Magistrate Judge Act, 28 U.S.C. § 631 *et seq*., "does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (collecting cases). This objection is therefore overruled.

With his second objection, Ketchum argues that Judge Komives erred by relying on *Heck v. Humphrey*, 512 U.S. 477 (1994), to dismiss his retaliation claim. Judge Komives indicated

that Ketchum "seeks injunctive relief . . . to what he claims is retaliation against him by the Michigan State Police and various governmental entities of the City of Saginaw and Saginaw County." Report & Rec. 16. Judge Komives explained that Ketchum alleges a "conspiracy was formed . . . to cover up the conduct of the defendants in illegally searching and assaulting him[,]" a conspiracy that led to Ketchum's "convictions in the separate case and the resulting sentence of life imprisonment." *Id*. at 16–17. Indeed, as Ketchum himself argues in his response to the Defendants' motion for summary judgment, "[t]he aftermath of the brutal assault by the defendants, manifested a conspiracy to falsely arrest, prosecute and wrongly convict him by and through the help of a local and familiar Police Agency." Pl.'s Resp. 23, ECF No. 35. Ketchum goes on to allege that after law enforcement "learned that [he] had pending charges for resisting and obstructing, [operating while intoxicated] . . . [and] learn[ed] of [his] plans, and attempts to hire an attorney to file a suit against them[,]" he "'suddenly' became a suspect in the assault of the former girlfriend he had taken to the hospital to get help." *Id*. at 24. Thus, Ketchum confirmed that his retaliation claim concerns an alleged conspiracy to trump up the charges for which he was later convicted: assault with intent to commit murder, torture, mayhem, resisting or obstructing an officer, and carrying a weapon with unlawful intent.

*Heck*, the case Ketchum claims was inappropriately applied by Judge Komives, stands for the proposition that when a § 1983 plaintiff alleges he was harmed "by actions whose unlawfulness would render a conviction or sentence invalid," that plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. Otherwise the § 1983 claim must be dismissed. *Id*. at 487.

Judge Komives concluded that Ketchum's success on his retaliation claim would "necessarily imply that [his] convictions" in the separate case "are invalid." Report & Rec. 18. This follows from Ketchum's allegations that he was only charged in the other case because of the Defendants' conspiracy to retaliate against him. So, under *Heck*, Judge Komives recommended that Defendants' motion for summary judgment be granted on Ketchum's retaliation claim.

Ketchum argues that *Heck* does not bar his retaliation claim because he filed his § 1983 complaint before "he was even brought to trial" in the other case. Pl.'s Objs. 10. Because the plaintiff in *Heck* brought his claims after "his conviction as a ploy to be used to invalidate it," Ketchum believes the case does not apply here. *Id*. He is wrong.

In *Heck*, the Supreme Court considered a claim not unlike Ketchum's: a state prisoner brought a § 1983 action for damages challenging the conduct of state officials who, the prisoner claimed, had unconstitutionally caused his conviction by improperly investigating his crime and destroying evidence. 512 U.S. at 479. The Court pointed to "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" and emphasized that the same principle "applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . . ." *Id*. at 486. The Supreme Court later clarified the meaning of the *Heck* doctrine as follows: "a state prisoner's § 1983 action is barred (absent prior invalidation [of his conviction])—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

There is no doubt that success on Ketchum's retaliation claim would undermine his state court convictions. He alleges that, as a ploy to retaliate against him for the conduct underlying this case, the Defendants "fabricated evidence" and had him "false[ly] arrest[ed] by other Saginaw agencies . . . ." Pl.'s Compl. 7. Through this conspiracy, Ketchum alleges, the Defendants paved the way to his eventual state court convictions. Thus, to succeed on his retaliation claim, Ketchum's state court convictions would necessarily be impugned, and the claim is thus barred by *Heck*. *See, e.g.*, *Madkins v. City of Memphis*, 20 F. App'x 335, 337 (6th Cir. 2001) (plaintiff's § 1983 action barred by *Heck* because his claims "that he was entirely innocent and that the defendants conspired to convict him would necessarily imply the invalidity of his conviction and confinement for robbery."); *Long v. Atlantic City Police Dep't*, 670 F.3d 436, 447 (3d Cir. 2012) (plaintiff's claim was barred by *Heck* where he alleged that defendants conspired to obtain a capital murder conviction against him and effected the conspiracy by committing perjury, fabricating evidence, and suppressing exculpatory evidence).

This result is not changed, contrary to Ketchum's argument, by the fact that he filed his § 1983 action before his eventual convictions in the separate case. In *Wallace v. Kato*, 549 U.S. 384 (2007), the Supreme Court indicated that even when "a plaintiff files a [§ 1983 action] before he has been convicted," if the plaintiff "is ultimately convicted, and if the . . . civil suit would impugn that conviction, *Heck* will require dismissal." *Id*. at 394.

Ketchum's first objection relates to a claim he never raised in his complaint; his second objection concerns a claim that is plainly barred by *Heck*. Those objections will be overruled.

**B**

Khan, McMillan, and Welton also objected to Judge Komives's report, arguing that they are entitled to summary judgment "on Ketchum's excessive force claims." Defs.' Objs. 3, ECF

No. 44. They first assert that "there is no question that Ketchum was posing an immediate threat to officers and medical staff at the time force was used against him." *Id*. The Defendants emphasize that in their affidavits, they all "aver . . . that they did not torture, beat, or choke Ketchum, or subject him to gratuitous violence." *Id*. at 4. They further indicate that "drawing on experience and common sense, Ketchum's excessive force claims are just not plausible." *Id*. at 5.

The Sixth Circuit long ago recognized that "[o]n motion for summary judgment, affidavits containing allegations of dispositive facts must be denied on oath by the adverse party. 'If he does not so respond, summary judgment, if appropriate, shall be entered against him.' " *Gillmore v. Procter & Gamble Co.*, 417 F.2d 615, 617 (6th Cir. 1969) (quoting Fed. R. Civ. P. 56). Although the Defendants substantiate their claims with affidavits, Ketchum also submitted a signed affidavit in this case, equally accepting the risk of a perjury charge if a jury found the information to be false. In that affidavit, he asserts that that he verbally asserted his right to resist the blood draw but was otherwise "calm, submissive, non-combative, and cooperative." Ketchum Aff. ¶¶ 22, ECF No. 37.

So Ketchum has refuted the Defendants' sworn statements with a sworn statement of his own, in which he alleges facts that indicate he was not an immediate threat to officers or medical staff. Indeed, viewing the evidence in the light most favorable to Ketchum—as the law requires—he verbally contested the blood draw, but never did so physically (much less violently). As Judge Komives concluded, in applying the standard of review that he was required to apply, "these allegations, if accepted by a jury, would justify a jury in finding that defendants use[d] excessive force in executing the warrant to draw [Ketchum's] blood." Report & Rec. 15 (collecting cases). Moreover—also emphasized in Judge Komives's report—ruling

on the Defendants' motion for summary judgment involves competing factual representations, and resolving the dispute by "deciding to believe [one] affidavit rather than [another] affidavit[] . . . is inappropriate." *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990); *see also* Report & Rec. 15–16. The Defendants' assertion that "Ketchum's excessive force claims are just not plausible" is simply not responsive to the standard of review that Judge Komives or this Court must apply. *See* Defs.' Objs. 5. This objection will be overruled.

Next, the Defendants contest Judge Komives's conclusion that they are not entitled to qualified immunity. Because "Ketchum has not established the violation of a constitutional right[,]" they conclude "the circumstances support the application of qualified immunity." *Id*. at 6, 7. Here, too, they are incorrect; this objection will also be overruled.

Qualified immunity shields government officials performing discretionary functions from civil liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (internal quotation marks and citation omitted). In determining whether the Defendants are entitled to qualified immunity, the Court makes two inquiries: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right; and (2) was the right "clearly established" to the extent that a reasonable person in the officers' position would know that the conduct complained of was unlawful. *Id*. (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). It is well-settled that, in addressing whether summary judgment is warranted based on qualified immunity, the facts must be viewed "in the light most favorable to the plaintiffs." *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996); *see also Bomar v. City of Pontiac*, 643 F.3d 458, 462–63 (6th Cir. 2011).

Here, the facts—viewed most favorably to Ketchum—demonstrate a complicit man who only verbally contested his blood being drawn, but who was then beaten, choked, and otherwise abused. As explained above, these facts demonstrate that Ketchum's right to be free of excessive force was violated. It is also "clearly established" that "it is unreasonable to use significant force on a restrained subject, even if some level of passive resistance is presented." *Meirthew v. Amore*, 417 F. App'x 494, 499 (6th Cir. 2011). So, based on Ketchum's version of events, the Defendants violated his constitutional rights, which were clearly established at the time. Qualified immunity does not apply here.

**IV**

Accordingly, it is **ORDERED** that Ketchum's objections to Judge Komives's report, ECF No. 47, are **OVERRULED**.

It is further **ORDERED** that the Defendants' objections to Judge Komives's report, ECF No. 44, are **OVERRULED**.

It is further **ORDERED** that Judge Komives's report and recommendations, ECF No. 43, are **ADOPTED**.

It is further **ORDERED** that the Defendants' motion for summary judgment, ECF No. 27, is **GRANTED** in part and **DENIED** in part.

It is further **ORDERED** that Ketchum's claims for illegal search, illegal arrest and retaliation are **DISMISSED** with prejudice.

It is further **ORDERED** that Ketchum's claims against Defendant Werda are **DISMISSED** with prejudice.

Dated: July 18, 2014

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon David Ketchum #579069 at Alger Maximum Correctional Facility, N6141 Industrial Park Drive, Munising, MI 49862 by first class U.S. mail on July 18, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS