UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID KETCHUM,

        Plaintiff,                                      Case No. 10-cv-14749

v.                                                    Honorable Thomas L. Ludington

RANDY KHAN, et al.,

        Defendants.

_____/

**ORDER STATING FINDINGS OF FACT AND CONCLUSIONS OF LAW AND GRANTING JUDGMENT ON PARTIAL FINDINGS FOR DEFENDANTS**

This case concerns an excessive force claim, pursuant to 42 U.S.C. § 1983, made by Plaintiff David Ketchum regarding a warrant to draw Ketchum's blood which was executed by Michigan State Police Troopers. On February 27, 2014, Magistrate Judge Paul J. Komives issued a report recommending that the motion for summary judgment filed by Defendants Werda, Welton, McMillan, and Khan be granted in part and denied in part. *See* Rep. & Rec., ECF No. 43. Judge Komives further recommended that all claims against Defendants be dismissed except for Plaintiff Ketchum's excessive force claim. *Id.* at 22. The Court adopted Judge Komives's Report and overruled the parties' objections to it. *See* July 18, 2014 Op. & Order, ECF No. 50.

After significant effort, Ketchum was appointed counsel from the firm, Pepper Hamilton. Ketchum and his appointed counsel immediately began having issues. After warning Ketchum that he had no right to court-appointed counsel and directing the parties to make another effort at cooperation, ECF No. 77, the Court allowed Pepper Hamilton to withdraw. ECF No. 84. Because the dispositive motion deadline had passed and the case was trial-ready, the Court rescheduled the bench trial.

On March 28, 2017, the bench trial was held. After Ketchum presented his case and Defendants presented two witnesses, the Court entered judgment for Defendants pursuant to Federal Rule of Civil Procedure 52(c). The factual and legal bases for the judgment on partial findings was articulated on the record. For clarity, the Court's findings of fact and conclusions of law will also be briefly presented here.

**I.**

Federal Rule of Civil Procedure 52(c) allows a Court to enter judgment on partial findings in a nonjury trial. "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." *Id.* In conjunction with a judgment on partial findings, the Court must make findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). *Id.*

Rule 52(a) explains that, in a nonjury trial, "the court must find the facts specially and state its conclusions of law separately." *Id.* at Rule 52(a). The findings and conclusions can be stated on the record or provided in an opinion issued after the trial. *Id.*

**II.**

The Court makes the following findings of fact. By Ketchum's own admission, he was driving a vehicle while intoxicated in the early morning of May 2, 2009. Defendants McMillan and Khan conducted a traffic stop of Ketchum's vehicle. He admitted to the officers that he was intoxicated, but refused to take a preliminary breath test. Ketchum became verbally abusive. When the officers informed him that they would obtain a warrant to draw his blood, Ketchum

stated that he had a religious right to object to the blood draw. Ketchum was arrested, placed in handcuffs, and put in the rear of the patrol car.

The officers then obtained a blood draw warrant and transported Ketchum to Covenant Hospital in Saginaw. According to Ketchum, he was docile and compliant as he entered the hospital and was restrained via a four point extremity restraining system on a bed, plus a torso band. He asserts that he did not resist until a doctor tried to physically withdraw the blood, but acknowledged moving his arm to avoid the blood draw. According to Misty Maclellan, a registered nurse who was present during the incident and who testified at trial, Ketchum was uncooperative and combative from the moment he entered the hospital. She remembers him being verbally abusive and physically resistant. Maclellan testified that blood draw warrants are typically executed while the arrestee is sitting in a chair. Ketchum's behavior made that impossible. Because Ketchum was so combative, the hospital staff decided that he needed to be placed in "four point restraints." That restraining method involves straps which are wound around the individual's wrists and ankles. Prior to being restrained, Ketchum kicked two nurses.

Ketchum asserts that, when the doctor tried to draw the blood, he began struggling against his restraints. He contends that the officers twisted metal handcuffs into his wrists and ankles so deeply that they drew blood and chipped bone. He also accuses the Defendants of choking him.

Maclellan, on the other hand, indicates that hospital staff and officers physically held Ketchum while the blood was being drawn. She testified that she saw no torture and no unnecessary actions by the officers present in response to Ketchum's combative behavior.

Officer Kevin Fent also testified at trial. He is a Saginaw County Jail officer who was working on the night Ketchum was booked and videotaped Ketchum's processing. Officer Fent

authenticated a video which depicted Ketchum being ushered into the police department by several officers. Ketchum was agitated and belligerent in the video. Ketchum walked without difficulty up to the counter where certain information was obtained. Ketchum stated that he did not remember his name, accused officers of assaulting him in the police car, and complained of pain in multiple parts of his body. Specifically, Ketchum asserted that his back, face, and neck were injured. He also mentioned, in passing, that his wrists and ankles had been harmed. At that point, Ketchum abruptly ceased standing and went limp, collapsing to the floor. After the officers were unable to convince Ketchum to stand, they carried him to a holding cell.

### III.

The framework for analyzing claims of excessive force when the defense of qualified immunity has been raised comes from the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001). A court confronted with a claim of qualified immunity must answer two questions: (1) "[D]o the facts alleged show the officer's conduct violated a constitutional right?," *Saucier*, 533 U.S. at 201, and (2) "[W]as the right 'clearly established' to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful," *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (quoting *Saucier*, 533 U.S. at 201). These inquiries do not need to be taken in order. *Id*.

Excessive force claims are analyzed under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The inquiry into the reasonableness of an officer's actions is a delicate one, especially when the officer is confronted with a rapidly-changing situation. It requires analyzing the situation confronting the officer as the

situation was known to him as it was unfolding, not using "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

On the record, the Court found Maclellan's testimony to be credible and Ketchum's testimony to be self-serving and non-credible. Ketchum admitted to being intoxicated during the entire encounter. The aggressive behavior he admitted to, which Maclellan described, and which is depicted in the video is all consistent with an inebriated, violent man. Given Ketchum's verbal and physical aggression leading up to the blood draw and his writhing during the blood draw, the Defendants' decision to physically hold him down was reasonable. Ketchum had already injured two nurses and had repeatedly indicated his intention to resist all efforts to draw his blood. The officers were acting pursuant to a valid warrant to draw Ketchum's blood, and the force they used in obtaining the blood was proportional to the situation presented. The conclusion that the force used was reasonable is bolstered by the video, which demonstrates that Ketchum was able to walk and stand when being booked at the police station mere minutes after the incident. If Defendants had used unreasonable and excessive force in restraining Ketchum, physical manifestations of that force should have been obvious in a video taken a short time later. Because the Defendants responded reasonably to Ketchum's behavior, the force they applied to hold Ketchum down during the blood draw did not violate his constitutional rights. Because no constitutional right violation occurred, Defendants are entitled to qualified immunity.

**IV.**

Accordingly, it is **ORDERED** that, in accordance with Federal Rule of Civil Procedure 52(c), on Count Two of Plaintiff Ketchum's Complaint against Defendants, judgment is **ENTERED** in favor of Defendants and against Plaintiff Ketchum.

Dated: March 31, 2017                                    s/Thomas L. Ludington
                                                         THOMAS L. LUDINGTON
                                                         United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2017.

                                                         s/Michael A. Sian
                                                         MICHAEL A. SIAN, Case Manager

---